**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KAREN GRUBER, | |
| Plaintiff, | Case No. |
| v. | |
| CENLAR FSB; CITIMORTGAGE, INC.; and U.S. BANK NATIONAL ASSOCIATION, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Plaintiff KAREN GRUBER, through undersigned counsel, brings this complaint against Defendants CENLAR FSB ("Cenlar"); CITIMORTGAGE, INC. ("Citimortgage"), and U.S. BANK NATIONAL ASSOCIATION ("US Bank"), and alleges as follows:

### NATURE OF THE CASE

1.       This action arises from Defendants willful noncompliance with applicable law regarding loan modifications for residential mortgages. Defendants strung Plaintiff along for years on her application for a loan modification, denied her based on inaccurate information, then ignored her request for appeal and sought to sell her home in foreclosure.

2.       Plaintiff now brings this action for damages related to Defendants' misconduct in the loan modification process. Plaintiff's claims arise under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Debt Collection Practices Act (the "FDCPA"), and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").

### JURISDICTION AND VENUE

3.       This Court has subject matter jurisdiction because Plaintiffs' claims arise, in part, under RESPA and the FDCPA, both federal laws. The Court thus has jurisdiction pursuant to §

1

28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

4.       Venue is proper in this District under 28 U.S.C. § 1391, as the events complained of occurred in this District.

**PARTIES**

5.       Plaintiff is a natural person who resides at 1144 Lyman Ave., Oak Park, Illinois 60304 (the "subject property").

6.       Plaintiff purchased the subject property as her primary family residence.

7.       Plaintiff is a resident of Cook County, Illinois.

8.       Cenlar is a federal savings bank that acts as a mortgage servicer for residential home mortgages.

9.       Cenlar does business in Illinois, including in this District.

10.     Citimortgage is a New York corporation that holds and services residential home mortgages.

11.     Citimortgage does business in Illinois, including in this District.

12.     US Bank is a national bank that holds residential home mortgages.

13.     US Bank does business in Illinois, including in this District.

**FACTS SUPPORTING CAUSES OF ACTION**

14.     Plaintiff took out a mortgage loan (the "subject loan" secured by the subject property.

15.     Plaintiff took out the subject loan primarily for personal, family, and household purposes.

16.     In November 2015, Plaintiff's family experienced health-related problems that resulted in financial difficulty.

17.     After Plaintiff and her family exhausted their savings, Plaintiff fell behind on her payments due on the subject loan around June 2016.

18.     Plaintiff subsequently tried to catch up on her payments, but was unable to pay the arrearage.

19.     At all relevant times, US Bank, in its capacity as trustee for CMALT REMIC Series 2007-A1 – REMIC Pass-Through Certificates Series 2007-A1, acted as the holder of the mortgage.

20.     On October 16, 2017, US Bank filed a foreclosure action against Plaintiff in Cook County Chancery Court (the "foreclosure action").

21.     From the initiation of the foreclosure action through present, Citimortgage has been a servicer for the subject loan.

**A.      Plaintiff's first loan modification application**

22.     On February 1, 2018, Plaintiff, through counsel, submitted a loss mitigation application to the law firm representing US Bank in the foreclosure action.

23.     Plaintiff had been informed that submitting the application to US Bank's counsel would result in the application being promptly submitted to Citimortgage for processing and consideration.

24.     Citimortgage responded on February 14, 2018, requesting additional documentation. Citimortgage did not specify a deadline by which such information must be submitted.

25.     Plaintiff provided the additional documentation on March 9, 2018.

3

26.     Plaintiff further supplemented her application with additional materials that were previously unavailable on March 11, 2018, March 20, 2018, and March 21, 2018.

27.     As of March 21, 2018, Plaintiff had submitted a complete loss mitigation application to Citimortgage.

28.     On April 11, 2018, a representative from Citimortgage emailed Plaintiff's attorney to convey that Plaintiff's "file is still in underwriting awaiting review."

29.     On April 24, 2018, a representative from Citimortgage emailed Plaintiff's attorney with an additional request for documents to complete Plaintiff's application. Citimortgage did not specify a deadline by which such information must be submitted.

30.     This request was improper. Plaintiff had already submitted a complete loss mitigation application, and Citimortgage was required to provide a decision on such application within 30 days of March 21, 2018.

31.     Plaintiff, however, believed that ceding to Citimortgage's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

32.     On May 11, 2018, Plaintiff, through counsel, provided Citimortgage the requested documentation.

33.     As of May 11, 2018, Plaintiff had again submitted a complete loss mitigation application to Citimortgage.

34.     On May 30, 2018, a representative from Citimortgage emailed Plaintiff's attorney with an additional request for documents to complete Plaintiff's application. Citimortgage did not specify a deadline by which such information must be submitted.

35.     This request was improper. Plaintiff had already submitted a complete loss mitigation application, and Citimortgage was required to provide a decision on such application within 30 days of May 11, 2018.

36.     Plaintiff, however, believed that ceding to Citimortgage's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

37.     On June 7, 2018, Plaintiff, through counsel, provided Citimortgage the requested documentation.

38.     As of June 7, 2018, Plaintiff had again submitted a complete loss mitigation application to Citimortgage.

39.     On June 27, 2018, a representative from Citimortgage emailed Plaintiff's attorney with an additional request for documents to complete Plaintiff's application. Citimortgage did not specify a deadline by which such information must be submitted.

40.     This request was improper. Plaintiff had already submitted a complete loss mitigation application, and Citimortgage was required to provide a decision on such application within 30 days of June 7, 2018.

41.     Plaintiff, however, believed that ceding to Citimortgage's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

42.     On July 10, 2018, Plaintiff, through counsel, provided Citimortgage the requested documentation.

43.     As of July 10, 2018, Plaintiff had again submitted a complete loss mitigation application to Citimortgage.

44. On July 26, 2018, a representative from Citimortgage emailed Plaintiff's attorney with an additional request for documents to complete Plaintiff's application. Citimortgage did not specify a deadline by which such information must be submitted.

45. This request was improper. Plaintiff had already submitted a complete loss mitigation application, and Citimortgage was required to provide a decision on such application within 30 days of July 10, 2018.

46. Plaintiff, however, believed that ceding to Citimortgage's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

47. On August 6, 2018, Plaintiff, through counsel, provided Citimortgage the requested documentation.

48. As of August 6, 2018, Plaintiff had again submitted a complete loss mitigation application to Citimortgage.

49. Citimortgage then sent a letter directly to Plaintiff dated August 29, 2018, with an additional request for documents to complete Plaintiff's application.

50. Plaintiff received this letter on or about September 12, 2018.

51. This request was improper. Plaintiff had already submitted a complete loss mitigation application, and Citimortgage was required to provide a decision on such application within 30 days of August 6, 2018.

52. Plaintiff, however, believed that ceding to Citimortgage's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

53.     On September 18, 2018, Plaintiff, through counsel, provided Citimortgage the requested documentation.

54.     As of September 18, 2018, Plaintiff had again submitted a complete loss mitigation application to Citimortgage.

55.     On September 21, 2018, a representative from Citimortgage emailed Plaintiff's attorney stating, "We have everything needed at this time to start your review.  I will be sending your file over to an underwriter immediately to begin this process.  If the underwriter needs additional documents, I will let you know."

56.     On October 19, 2018, a representative from Citimortgage emailed Plaintiff's attorney with an additional request for documents to complete Plaintiff's application. Citimortgage did not specify a deadline by which such information must be submitted.

57.     This request was improper. Plaintiff had already submitted a complete loss mitigation application, and Citimortgage was required to provide a decision on such application within 30 days of September 18, 2018.

58.     Plaintiff, however, believed that ceding to Citimortgage's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

59.     On November 6, 2018, Plaintiff, through counsel, provided Citimortgage the requested documentation.

60.     As of November 6, 2018, Plaintiff had again submitted a complete loss mitigation application to Citimortgage.

61.     Citimortgage subsequently denied Plaintiff's loss mitigation application and rejected Plaintiff's request for a loan modification.

7

62.    Citimortgage did not notify Plaintiff or her counsel of Citimortgage's decision.

63.    Citimortgage did not provide Plaintiff with an opportunity to review and appeal Citimortgage's decision.

64.    In January 2019, Plaintiff's counsel called Citimortgage to inquire about the status of Plaintiff's application.

65.    A Citimortgage representative informed Plaintiff's counsel at that time that Citimortgage had denied Plaintiff's application.

66.    When Plaintiff's counsel informed Citimortgage that Citimortgage never sent a denial letter and never provided an opportunity for appeal, Citimortgage falsely stated that it had sent the denial letter.

67.    Plaintiff's counsel demanded mailing information and proof of delivery.

68.    Citimortgage responded by providing the following FedEx tracking number: 784229218059.

69.    The FedEx records for this tracking number indicate a package that was shipped on June 12, 2018, and delivered to an unknown Chicago address on October 12, 2018.

70.    As of June and October 2018, Plaintiff was still submitting documents to Citimortgage at Citimortgage's request. Citimortgage had not yet made a decision regarding Plaintiff's loss mitigation application.

71.    Citimortgage never actually sent a denial letter to Plaintiff or her counsel.

72.    Citimortgage never actually informed Plaintiff or her counsel of Plaintiff's right to appeal Citimortgage's denial, or of the deadline for submitting such an appeal.

73.    Plaintiff's counsel then had a follow-up conversation with a Citimortgage representative, also in January 2019.

74. The Citimortgage representative told Plaintiff's counsel that Citimortgage's denial was proper and was final, and that Plaintiff had no right to appeal Citimortgage's decision because the appeal deadline had passed.

75. Citimortgage maintained this position even though Citimortgage could provide no evidence whatsoever that Citimortgage had sent a denial letter and notice of right to appeal to Plaintiff or her counsel.

76. Rather than continue to fight with Citimortgage in the face of Citimortgage's false statements and misconduct, Plaintiff decided to submit a new loss mitigation application, believing that doing so would provide her with the best opportunity to obtain a loan modification and save her family home from foreclosure.

**B.      Plaintiff's second loan modification application**

77. On March 7, 2019, Plaintiff, through counsel, submitted a new loss mitigation application to Citimortgage.

78. On or around March 14, 2019, a representative of Citimortgage called Plaintiff, directly, and told Plaintiff that her loss mitigation application had gone into underwriting.

79. On or around March 28, 2019, Citimortgage sent a letter directly to Plaintiff requesting additional documentation for her loss mitigation application. Citimortgage set a deadline of April 27, 2019, for Plaintiff to provide the additional documentation.

80. Beginning on or about April 1, 2019, Citimortgage contracted with Cenlar as a sub-servicer for the subject loan. Accordingly, beginning on April 1, 2020, Plaintiff was instructed to send payments due on the subject loan to Cenlar.

81. On April 24, 2019, Plaintiff, through counsel, provided the requested documentation to Citimortgage.

82.     As of April 24, 2019, Plaintiff had submitted a complete loss mitigation application to Citimortgage.

83.     As of April 24, 2019, Citimortgage was still handling Plaintiff's loss mitigation application.

84.     On or about May 1, 2019, Cenlar sent a letter directly to Plaintiff stating that Cenlar had received her request to be considered for a loan modification.

85.     Also on or about May 1, 2019, Cenlar sent another letter directly to Plaintiff requesting additional documentation for her loss mitigation application. Cenlar set a deadline of June 15, 2019, for Plaintiff to provide the additional documentation.

86.     This request was improper. Plaintiff had already submitted a complete loss mitigation application to Citimortgage as of April 24, 2019. Cenlar was required to provide a decision on such application within 30 days of the date on which Cenlar took over for Citimortgage vis-à-vis Plaintiff's loss mitigation application.

87.     Plaintiff, however, believed that ceding to Cenlar's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

88.     On May 28, 2019, Plaintiff, through counsel, provided the requested documentation to Cenlar.

89.     As of May 28, 2019, Plaintiff had submitted a complete loss mitigation application to Cenlar.

90.     On or about June 3, 2019, Cenlar sent a letter directly to Plaintiff regarding her loss mitigation application. The letter stated, "A review on 05/28/2019 determined the application is complete and no further information is needed at this time."

10

91.     On or about June 27, 2019, Cenlar sent another letter directly to Plaintiff requesting additional documentation for her loss mitigation application. Plaintiff received the letter on or about July 6, 2019. Cenlar set a deadline of July 27, 2019, for Plaintiff to provide the additional documentation.

92.     This request was improper. Plaintiff had already submitted a complete loss mitigation application to Cenlar as of May 28, 2019. Cenlar was required to provide a decision on such application within 30 days of May 28, 2019, not another request for documents.

93.     Plaintiff, however, believed that ceding to Cenlar's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

94.     On July 23, 2019, Plaintiff, through counsel, provided the requested documentation to Cenlar.

95.     As of July 23, 2019, Plaintiff had again submitted a complete loss mitigation application to Cenlar.

96.     On or about July 26, 2019, Cenlar sent a letter directly to Plaintiff, which stated that Cenlar had "received your inquiry regarding a possible loan workout for the above-referenced mortgage loan." The letter than instructed Plaintiff to complete a number of forms and documents that Plaintiff had already provided to Cenlar.

97.     As of July 26, 2019, Cenlar was treating Plaintiff's pending loss mitigation application—which had been completed for several months—as if it was a brand-new application that had to start over from scratch.

98.     In the July 26, 2019 letter, Cenlar also made a false and improper threat: that Cenlar was entitled to engage in "collection activity" while Plaintiff's application was pending

Cenlar's review. Applicable law prohibited Cenlar from engaging in foreclosure-related collection activity.

99.     On or about July 31, 2019, Cenlar sent another letter directly to Plaintiff in which Cenlar falsely claimed that Plaintiff had failed to timely submit information that Cenlar had requested in connection with Plaintiff's loss mitigation application.

100.    Plaintiff had timely complied with all of Cenlar's document requests, even when such document requests were unnecessary, duplicative, or improper under applicable law.

101.    On August 12, 2019, Plaintiff, through counsel, submitted the additional documentation requested by Cenlar in the July 26, 2019 letter.

102.    As of August 12, 2019, Plaintiff had again submitted a complete loss mitigation application to Cenlar.

103.    On or about August 16, 2019, Cenlar sent another letter directly to Plaintiff requesting additional documentation for her loss mitigation application. Cenlar set a deadline of September 30, 2019, for Plaintiff to provide the additional documentation.

104.    This request was improper. Plaintiff had already submitted a complete loss mitigation application to Cenlar as of August 12, 2019. Cenlar was required to provide a decision on such application within 30 days of August 12, 2019, not another request for documents.

105.    Plaintiff, however, believed that ceding to Cenlar's improper demands for additional documents was the best way to modify the subject loan and save her family home from foreclosure.

106.    On August 26, 2019, Plaintiff, through counsel, submitted the additional documentation requested by Cenlar in the August 16, 2019 letter.

107.     On or about August 28, 2019, Cenlar sent another letter directly to Plaintiff. The letter stated, "A review on 08/26/2019 determined the application is complete and no further information is needed at this time."

108.     As of August 26, 2019, Plaintiff had again submitted a complete loss mitigation application to Cenlar.

109.     On or about September 25, 2019, Cenlar sent another letter directly to Plaintiff. In this letter Cenlar stated that it was waiting for "Value Not Yet Received" and that such information was to be provided by a "third party."

110.     The letter stated that "A determination letter, [sic] will be mailed to you no later than 30 days from the date of this letter, indicating what programs if any you were able to be approved for, or advising of any programs for which you have been denied, as well as the reasons for the denial."

111.     The letter also stated, "If we do not receive the required documents and/or information from the third party, within 30 days from the date of this letter, 10/25/2019, we may deny your loan modification request."

112.     Plaintiff was confused and distressed by this letter. She did not understand why she would be denied for a failure by someone else to provide information. She also did not know what "Value Not Yet Received" meant or referred to.

113.     On October 4, 2019, Plaintiff's counsel called Cenlar to inquire about the September 25 letter and the status of Plaintiff's loss mitigation application.

114.     On the call, Plaintiff's counsel learned that the September 25 letter referred to an appraisal that Cenlar had ordered. Cenlar also told Plaintiff's counsel that the appraisal was

completed as of the date of the call, and that Cenlar would provide a decision to Plaintiff on her pending loss mitigation application by October 24, 2019.

**C.      Cenlar denies Plaintiff's application based on incorrect information**

115.    On or about December 9, 2019, Cenlar sent another letter directly to Plaintiff denying her request for a loan modification.

116.    Plaintiff received the letter on or about December 19, 2019.

117.    Plaintiff disputed Cenlar's decision because, among other reasons, Cenlar had undervalued the subject property by no less than $200,000, and because Cenlar had used the date of December 6, 2019, to determine the amounts outstanding on the subject loan.

118.    Using the date of December 6, 2019, was improper. Plaintiff had completed her loss mitigation application as of April 24, 2019, and again on May 28, 2019, and again on July 23, 2019, and again on August 12, 2019, and again on August 26, 2019.

119.    Cenlar used December 6, 2019 solely because its own mistakes, negligence, and mishandling of Plaintiff's loss mitigation application caused substantial delays in Cenlar making a decision regarding her application.

120.    Cenlar's improper use of December 6, 2019, caused Cenlar to improperly add fees, interest, and other charges to the balance of the subject loan that had accumulated and been added to the balance by Cenlar after April 24, 2019, when Plaintiff's loss mitigation application was first completed.

**D.      Cenlar ignores Plaintiff's appeal, refers the matter back to foreclosure, and instructs US Bank to proceed with pursuing a foreclosure judgment and sale**

121.    In its December 9, 2019 denial letter, Cenlar stated that Plaintiff had until January 18, 2020, to appeal Cenlar's decision.

122.    On January 17, 2020, Plaintiff, through counsel, submitted an appeal to Cenlar. Attached to Plaintiff's appeal letter was substantial documentation supporting Plaintiff's claims of errors made by Cenlar in its review of Plaintiff's application.

123.    Cenlar received Plaintiff's appeal correspondence by fax on January 17, 2020.

124.    Cenlar also received Plaintiff's appeal correspondence by USPS Priority Express mail on January 18, 2020.

125.    Cenlar ignored Plaintiff's appeal and never responded to it.

126.    Instead, Cenlar treated Plaintiff's appeal as if it were a brand-new loss mitigation application, instead of an appeal of Cenlar's wrongful denial of Plaintiff's prior application.

127.    Cenlar also then referred the subject loan back to Citimortgage and US Bank for foreclosure proceedings.

128.    On February 20, 2020, Defendants caused to be filed in the foreclosure action a motion for entry of judgment of foreclosure and leave to sell the subject property at auction.

129.    Defendants were prohibited from taking these actions while Plaintiff's appeal of Cenlar's denial of her loss mitigation application was pending.

130.    Citimortgage and Cenlar were hired by US Bank to be the servicer for the subject loan.

131.    Citimortgage and Cenlar were authorized by US Bank to perform such services on behalf of US Bank, which Citimortgage and Cenlar performed at the request and direction of US Bank.

132.    At all times relevant to this complaint, US Bank authorized, directed, and ratified Citimortgage's and Cenlar's actions taken in connection with services performed and statements made for or on behalf of US Bank.

133. Citimortgage and Cenlar acted in a representative capacity on behalf of US Bank, and acted as US Bank's agent in connection with all of Citimortgage's and Cenlar's conduct related to the subject loan.

134. Citimortgage's and Cenlar's employees, representatives, and/or agents were acting at the control and direction of US Bank, which is vicariously liable for the actions of Citimortgage's and Cenlar's employees, representatives, and/or agents.

135. Cenlar was hired by Citimortgage to be a sub-servicer or co-servicer for the subject loan.

136. Cenlar was authorized by Citimortgage to perform such services on behalf of Citimortgage, which Cenlar performed at the request and direction of Citimortgage.

137. At all times relevant to this complaint, Citimortgage authorized, directed, and ratified Cenlar's actions taken in connection with services performed and statements made for or on behalf of Citimortgage.

138. Cenlar acted in a representative capacity on behalf of Citimortgage, and acted as Citimortgages's agent in connection with all of Cenlar's conduct related to the subject loan.

139. Cenlar's employees, representatives, and/or agents were acting at the control and direction of Citimortgage, which is vicariously liable for the actions of Cenlar's employees, representatives, and/or agents.

**E. Damages suffered by Plaintiff**

140. As a direct and proximate result of Defendants' misconduct, Plaintiff was charged excess interest, fees, and other charges on the subject loan.

141. As a direct and proximate result of Defendants' misconduct, Plaintiff was forced to incur attorneys' fees to respond to US Bank's misconduct in the foreclosure action.

142.    As a direct and proximate result of Defendants' misconduct, Plaintiff has wasted dozens of hours preparing materials for her loss mitigation applications that Defendants mishandled and wrongfully denied.

143.    As a direct and proximate result of Defendants' misconduct, Plaintiff has suffered emotional distress.

### COUNT I – VIOLATIONS OF RESPA – BY CITIMORTGAGE<br>(AGAINST CITIMORTGAGE AND US BANK)

144.    Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

145.    The subject loan is a "federally related mortgage loan" under RESPA and 12 C.F.R. § 1024.2.

146.    Citimortgage is and has been a "servicer" of the subject loan under RESPA § 2605(i)(2) and 12 C.F.R. § 1024.2 at all times relevant to this complaint.

147.    12 C.F.R. §1024.41(c)(1) requires servicers to evaluate a complete loss mitigation application and provide a notice to the borrower in writing stating the servicer's determination to approve or deny the borrower for loss mitigation options, all within 30 days of receiving a borrower's completed application.

148.    Citimortgage received Plaintiff's complete loss mitigation application on March 21, 2018.

149.    Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

150.    Citimortgage received Plaintiff's complete loss mitigation application again on May 11, 2018.

151.    Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

152.    Citimortgage received Plaintiff's complete loss mitigation application again on June 7, 2018.

153.    Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

154.    Citimortgage received Plaintiff's complete loss mitigation application again on July 10, 2018.

155.    Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

156.    Citimortgage received Plaintiff's complete loss mitigation application again on August 6, 2018.

157.    Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

158.    Citimortgage received Plaintiff's complete loss mitigation application again on September 18, 2018.

159.    Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

18

160. Citimortgage received Plaintiff's complete loss mitigation application again on November 6, 2018.

161. Citimortgage thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Citimortgage's determinations to approve or deny Plaintiff for loss mitigation options.

162. Citimortgage also violated 12 C.F.R. §1024.41(d) by failing to timely notify Plaintiff of the reasons that Citimortgage determined to deny her request for a loan modification.

163. Citimortgage also violated 12 C.F.R. §1024.41(h) by failing to permit Plaintiff to appeal Citimortgage's determination to deny Plaintiff's request for a loan modification.

164. Citimortgage also violated 12 C.F.R. §1024.41(g) by causing US Bank to move for a foreclosure judgment and order of sale before Plaintiff's appeal was resolved.

165. RESPA Section 2605(k)(1)(E) states, in relevant part, that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

166. By violating 12 C.F.R. §§ 1024.41(c), (d), (g), and (h), Citimortgage also violated Section (k)(1)(E) of RESPA.

167. Citimortgage's failure to comply with RESPA is part of a pattern and practice of non-compliance with the provisions of RESPA.

168. Upon information and belief, Citimortgage's failure to comply with RESPA was intentional and willful.

169. At all times relevant to this Count, Citimortgage was US Bank's agent.

170.    US Bank is vicariously liable for all of Citimortgage's misconduct described in this Count.

171.    Plaintiff suffered damages as a result of the above-described misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

A.    Grant judgment in Plaintiff's favor against Citimortgage and US Bank;

B.    Award Plaintiff actual and additional damages pursuant to Section 2605(f) of RESPA;

C.    Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 2605(f) of RESPA; and

D.    Award any other relief this Honorable Court deems equitable and just.

### COUNT II – VIOLATIONS OF RESPA – BY CENLAR (AGAINST ALL DEFENDANTS)

172.    Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

173.    The subject loan is a "federally related mortgage loan" under RESPA and 12 C.F.R. § 1024.2.

174.    Cenlar is and has been a "servicer" of the subject loan under RESPA § 2605(i)(2) and 12 C.F.R. § 1024.2 from April 1, 2019, through the present.

175.    Citimortgage received Plaintiff's complete loss mitigation application on April 24, 2019.

176.    Thereafter, Citimortgage transferred the servicing responsibility for Plaintiff's loss mitigation application to Cenlar.

177.    Per 12 C.F.R. § 1024.41(k)(3), Cenlar was required to comply with the deadlines set forth in 12 C.F.R. § 1024.41(c) for Plaintiff's pending, completed loss mitigation application.

178. Cenlar violated 12 C.F.R. §§1024.41(c)(1) and (k)(3) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Cenlar's determinations to approve or deny Plaintiff for loss mitigation options.

179. Cenlar received Plaintiff's complete loss mitigation application again on May 28, 2019.

180. Cenlar thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Cenlar's determinations to approve or deny Plaintiff for loss mitigation options.

181. Cenlar received Plaintiff's complete loss mitigation application again on May 28, 2019.

182. Cenlar thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Cenlar's determinations to approve or deny Plaintiff for loss mitigation options.

183. Cenlar received Plaintiff's complete loss mitigation application again on July 23, 2019.

184. Cenlar thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Cenlar's determinations to approve or deny Plaintiff for loss mitigation options.

185. Cenlar received Plaintiff's complete loss mitigation application again on August 12, 2019.

186. Cenlar thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Cenlar's determinations to approve or deny Plaintiff for loss mitigation options.

187.    Cenlar received Plaintiff's complete loss mitigation application again on August 26, 2019.

188.    Cenlar thereafter violated 12 C.F.R. §1024.41(c)(1) by failing to timely evaluate Plaintiff's completed application and by failing to notify her of Cenlar's determinations to approve or deny Plaintiff for loss mitigation options.

189.    Cenlar violated 12 C.F.R. §1024.41(h) by failing to evaluate Plaintiffs appeal and by failing to make a determination regarding her appeal.

190.    Cenlar also violated 12 C.F.R. §1024.41(g) by causing US Bank to move for a foreclosure judgment and order of sale before Plaintiff's appeal was resolved.

191.    RESPA Section 2605(k)(1)(E) states, in relevant part, that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

192.    By violating 12 C.F.R. §§ 1024.41(c), (d), (g), and (h), Cenlar also violated Section (k)(1)(E) of RESPA.

193.    Cenlar's failure to comply with RESPA is part of a pattern and practice of non-compliance with the provisions of RESPA.

194.    Upon information and belief, Cenlar's failure to comply with RESPA was intentional and willful.

195.    At all times relevant to this Count, Cenlar was US Bank's agent.

196.    US Bank is vicariously liable for all of Citimortgage's misconduct described in this Count.

197.    At all times relevant to this Count, Cenlar was Citmortgage's agent.

198.    Citimortgage is vicariously liable for all of Cenlar's misconduct described in this Count.

199.    Plaintiff suffered damages as a result of the above-described misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

E.    Grant judgment in Plaintiff's favor against Cenlar, Citimortgage, and US Bank;

F.    Award Plaintiff actual and additional damages pursuant to Section 2605(f) of RESPA;

G.    Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 2605(f) of RESPA; and

H.    Award any other relief this Honorable Court deems equitable and just.

## COUNT III – VIOLATIONS OF ICFA
### (AGAINST ALL DEFENDANTS)

200.    Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

201.    Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

202.    Defendants are each a "person" as defined under Section 1(e) of ICFA.

203.    Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

**Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

204.    Defendants violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

205.     Defendants' unfair acts include: violations of RESPA, failure to provide Plaintiff with true and accurate information regarding her loss mitigation applications, and charging Plaintiff with excess interest, fees, and other charges due solely to delays and misconduct related to Plaintiff's loss mitigation applications..

206.     Defendants' communications and conduct were purposefully confusing, misleading, and oppressive.

207.     Defendants intended that Plaintiff rely on their false statements and unfair actions because such statements and actions were made in Defendants' official capacities as the servicers and holder of the subject loan.

208.     Defendants' conduct was willful, malicious, unfair, and arbitrary.

209.     Defendants' conduct offends public policy as it demonstrates an industry-wide practice of ignoring applicable laws and regulations governing loss mitigation, and making it confusing and downright impossible for a borrower to get a fair shot at approval for a loss mitigation option.

210.     Defendants' actions cause substantial injury to consumers generally because:

    a)     consumers reasonably expect their mortgage servicer's promises to be honored and their loans and accounts to be properly managed;

    b)     consumers reasonably expect that creditors and loan servicers will communicate with them truthfully and accurately regarding their account; and

    c)     consumers reasonably expect that large corporations will honor and respect federal regulations

211.     All of Defendants' conduct described herein occurred in the course of conduct involving trade or commerce.

212.     An award of punitive damages is appropriate because Defendants' conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff.

213. Plaintiff suffered damages as a result of Defendants' misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    A.    Grant judgment in Plaintiff's favor against Cenlar, Citimortgage, and US Bank;

    B.    Award Plaintiff actual and punitive damages in an amount to be determined at trial for the underlying ICFA violations;

    C.    Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 10a(c) of ICFA; and

    D.    Award any other relief this Honorable Court deems equitable and just.

### COUNT IV – VIOLATIONS OF THE FDCPA
### (AGAINST CENLAR)

214. Plaintiff restates and realleges all prior paragraphs as though fully set forth herein.

215. Plaintiff is a consumer under Section 1692a(3) of the FDCPA, as the subject loan was extended on Plaintiff's primary residence and was strictly for personal, family, and household purposes.

216. The subject loan qualifies as a "debt" under Section 1692a(5) of the FDCPA.

217. Cenlar is a "debt collector" under Section 1692a(6) of the FDCPA because, (a) it regularly collects debts and uses the mail or telephone to collect delinquent consumer accounts, (b) the principal purpose of its business is to collect debts, and (c) the subject loan was allegedly in default when it acquired servicing and/or enforcement rights thereto.

218. In its attempts to collect a debt from Plaintiff, Cenlar violated the FDCPA by, among other things:

    a.    communicating with directly with Plaintiff in connection with the collection of the subject loan from Plaintiff even though Cenlar knew that Plaintiff was represented by counsel, in violation of Section 1692c(2);

    b.    referring Plaintiff's account to foreclosure, which had the natural consequence of harassing, oppressing, and abusing Plaintiff, in violation of Section 1692d;

    c.    making false representations to Plaintiff regarding the status of her loss mitigation application and the requirements for completing the application, in violation of Sections 1692e and e(10);

    d.    threatening Plaintiff with collection activity when such action could not legally be taken, in violation of Section 1692e(5);

    e.    communicating and threatening to communicate to Citimortgage and US Bank credit information regarding the subject loan which Cenlar knew or should have known to be false, in violation of Section 1692e(8); and

    f.    referring Plaintiff's account to foreclosure, which was unfair and unconscionable under the circumstances, in violation of Section 1692f.

219.    Plaintiff suffered damages proximately caused by Cenlar's misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    A.    Grant judgment in Plaintiff's favor against Cenlar;

    B.    Award Plaintiff statutory and actual damages in an amount to be determined at trial;

    C.    Award Plaintiff reasonable attorneys' fees and costs pursuant to Section 1692k of the FDCPA; and

    D.    Award any other relief this Honorable Court deems equitable and just.

**Plaintiff Demands Trial by Jury.**

Respectfully Submitted,

/s/ *Daniel Brown*
Daniel Brown (ARDC # 6299184)
Main Street Attorney, LLC
PO Box 247
Chicago, IL 60690
(773) 453-7410
daniel@mainstreetattorney.com

*Attorney for Plaintiff*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

By: /s/ *Daniel Brown*
Daniel Brown

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Daniel Brown*
Daniel Brown